**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**MITCHELL H. COHEN U.S. COURTHOUSE**
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

**Andrew B. Altenburg, Jr.**                                                                                                        (856) 361-2320
**U.S. BANKRUPTCY JUDGE**

May 12, 2021

Jenny Kasen, Esq.                                    Paul Pflumm, Esq.
Kasen & Kasen, P.C.                              Joseph A. McCormick, Jr. P.A.
Society Hill Office Park, Suite 3          76 Euclid Avenue, Suite 103
1874 E. Marlton Pike                           Haddonfield, New Jersey 08033
Cherry Hill, NJ  08003-2038

      **RE:**    **In re Williams**
             **Bankr. Case No. 17-25034-ABA**

Dear Counsel,

      Before the court is the debtor's Motion (I) to Quash Rule 45 Subpoena; (II) for Protective Order; and (III) for Counsel Fees and Costs (Doc. No. 63) and the trustee's Cross-Motion to Compel George and Donna Purkins to Produce Documents Designated in Subpoena Issued Pursuant to Fed. R. Bankr. P. 2004 (Doc. No. 65). Hearings were held March 16, 2021 and May 11, 2021. Between the hearings, the parties were afforded the opportunity to supplement the record, which they have. The record is complete, and this matter is now ripe for disposition. For the reasons explained below, the court will deny both motions.

      The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**Background**

      Donna and George Purkins are the daughter and son-in-law of the debtor, Dolores Williams. Two years' prepetition, they converted their garage into a handicapped-accessible living space for Ms. Williams. They allege that while Ms. Williams lived with them, Donna cleaned Ms. Williams' living space, paid all utilities, prepared dinners at least twice a week, picked up medicine for Ms. Williams, took her to the doctor and other appointments, went food shopping for her, and took her vehicle to the mechanic for repairs as needed. Ms. Williams allegedly paid $500/month rent, with other expenses paid by the Purkinses for her benefit, totaling $15,859.

      Ms. Williams continued to live with the Purkinses for 20 months postpetition, during which, the Purkinses allege, Donna continued to provide the same services and Ms. Williams continued to pay $500 rent.

However, Raymond Lombard, Ms. Williams' son, alleged that the Purkinses completely exhausted his mother's savings and controlled her income. Doc. No. 65-2, ¶ 5. He alleged that his mother's bank accounts were set up so that only the Purkinses had access. They made numerous transfers from her accounts into theirs, totaling $94,894. He alleged that his mother was not provided with any receipts or explanations as to how her money was being used and that the balance in the accounts was hidden from her. He believes his mother was a victim of elder abuse, alleging that she "was berated and intimidated by George Purkins, leaving her unable to resist the Purkins' use of her money." *Id.*, ¶ 10. Ms. Williams has lived with Mr. Lombard since March 2019. *Id.*, ¶ 4.

Following up on Mr. Lombard's allegations, on September 17, 2020 the trustee sent a Rule 45 subpoena to the Purkinses via certified and regular mail requesting production of:

1. A copy of any contract and or other agreement entered into with a contractor and/or handyman for conversion of the garage at 311 Stratford Ave into a mother-in-law suite;

2. An accounting of all payments made to contractors or other third parties for the conversion of the garage at 311 Stratford Ave into a mother-in-law suite; and

3. An accounting of all payments made by Ms. Williams to George and/or Donna Purkins from August 1st, 2015 to date including the date of said payment, the amount of said payment, and the reason or basis for such payment.

The Purkinses retained attorney Jenny Kasen, allegedly "at a significant cost" (Doc. No. 63, ¶ 28). They then produced the contract for the garage conversion; an accounting by date and amount of all payments made relating to their garage conversion; and an accounting by date and amount of all payments made by Ms. Williams to the Purkinses from August 1, 2015 to the present. But the descriptions they offered for the accounting by date and amount were the same for every entry: "Debtor's housing and living expenses." The trustee also noted that most of the transactions ended in a "5" or a "0," leading him to suspect that the transactions were not valid. Doc. No. 71, pp. 3-4. The court also notes that not one entry was of $500, the alleged monthly rental amount.

On January 5, 2021, the trustee sent a second Rule 45 subpoena (the "Second Subpoena") to the Purkinses via certified and regular mail, requesting that for each payment listed, the Purkinses produce receipts, bills, check images, statements, check registers, and any other documentation showing the type of expense and recipient of monies used for Ms. Williams; all bank statements and check images "for the period of August 27, 2015 and October 23, 2019"[1]; and all accountings, check registers, or other records maintained recording monies used for Ms. Williams' housing and living expenses. Doc. No. 65-6, ex. C, p. 8.

Again, the Purkinses alleged that they had to retain counsel "at a significant cost" (Doc. No. 63, ¶ 30) to respond to the subpoenas. They asked the court to quash the Second Subpoena and enter a protective order pursuant to Federal Rules of Procedure 26 and 45 because:

---

[1] The court assumes that the trustee was asking for all of the statements from and including through the two dates, not just the statement for those two dates.

2

1. The time limit for the trustee to exercise his avoidance powers has expired
2. Rule 45 subpoenas are required to be served personally
3. The Second Subpoena subjects the Purkinses to an undue burden

In addition, the Purkinses alleged that a protective order allows for an award of expenses incurred with obtaining that protective order, therefore they seek attorney's fees and costs.

The trustee responded that:

- He has good cause to seek the documents as he believes the Purkinses stole Ms. Williams' money
- The Purkinses did not meet their burden to show that the request constitutes an undue burden or expense
- The trustee is not-time barred, as he is seeking a claim of conversion, theft by deception and "other potentially relevant intentional torts" under New Jersey state law with respect to the questioned transfers, all of which have a six-year statute of limitations
- The subpoenas are not required to be served personally
- The request for sanctions is frivolous

In addition, the trustee alleged that the Purkinses are in contempt of the subpoena, therefore he cross-moved for an order compelling them to comply with the Second Subpoena, else be subject to sanctions.

The Purkinses responded (Doc. No. 67) that Ms. Williams' transfers averaged only $660 per month. They asserted that the allegations of Mr. Lombard on which the trustee relies are belied by the documents already within the trustee's possession, custody and control, specifically, the debtor's bankruptcy schedules and some bank account statements. These show that the bank accounts were not set up so that only the Purkinses had access. They also show that Ms. Williams only transferred a total of $15,859[2] to the Purkinses in the 24 months prepetition. They argued that "[c]ertainly, the trustee cannot legitimately maintain that the Purkins[es] defrauded the debtor by accepting $660.79 per month in exchange therefore." Doc. No. 67, p. 7. On the law, the Purkinses argued that the two-year limitations of section 549(d) applies to section 549(a) actions, and that the trustee lacks standing to pursue any state law claims arising postpetition.

At the hearing on the motions, the trustee conceded that he is time-barred from bringing any actions on the postpetition transfers. Therefore, the court need only discuss the Second Subpoena as it relates to the prepetition transfers.

---

[2] The trustee puts the prepetition amount at $15,694. Doc. No. 71, p. 3. The amount is not relevant at this point.

3

**The bankruptcy case**

Ms. Williams filed a no asset chapter 7 bankruptcy case on July 26, 2017. By order dated October 24, 2017, her case was converted to chapter 13 on her motion. On October 23, 2019, the case was converted back to chapter 7 on motion of the chapter 13 trustee for failure to make plan payments.

Ms. Williams' original Schedule A/B disclosed three bank accounts holding $21, $323, and $5 respectively. On December 7, 2017, she filed an amended Schedule A/B, omitting any bank accounts. Doc. No. 24.

On her original Schedule I, Ms. Williams disclosed $2,207 in monthly income. Doc. No. 1. On Schedule J, she disclosed paying $867 monthly rent. *Id.* On October 27, 2017, she filed amended Schedules I and J, not changing the income disclosed on Schedule I, but on Schedule J, *inter alia*, changing the monthly rent to $500 and changing other expenses, for a net decrease in monthly expenses from $2,203 to $1,906. Doc. No. 18.

## DISCUSSION

A. **Statute of limitations/standing**

The Purkinses evidently did not realize initially that the trustee is considering bringing New Jersey tort actions against them as opposed to only avoidance actions. Since the allegation is that they wrongfully took money from Ms. Williams, not that Ms. Williams transferred money to hinder, delay, defraud creditors (11 U.S.C. § 548), or to prefer them (11 U.S.C. § 547), or any of the avoidance options under 11 U.S.C. § 544, the limitations of 11 U.S.C. § 546 do not apply.[3] Instead, the trustee seeks information from the Purkinses to help him determine whether causes of action exist for conversion and unjust enrichment under New Jersey law.

Upon the commencement of a case, a bankruptcy estate is created comprised of all legal and equitable interest of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). That property includes causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) ("'The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act.'") (quoting H.R. Rep. No. 95–595, p. 367 (1977); S. Rep. No. 95–989, p. 82 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5868, 6323); *In re Hussain*, 397 B.R. 730, 735 (Bankr. D.N.J. 2008).

The chapter 7 trustee steps into the shoes of a debtor to prosecute any causes of action on the behalf of the bankruptcy estate. 11 U.S.C. § 704(a)(1) ("The trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves. . . ."); 11 U.S.C. § 323(b) ("The trustee in a case under this title has capacity to sue and be sued."); Fed. R. Bankr. P. 6009 ("With or without court approval, the trustee or debtor in possession may prosecute or may enter an

---

[3] As mentioned above, the trustee also is not pursuing any postpetition transfers pursuant to section 549, thus the limitations under that section are not relevant.

4

appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."). *See In re Tri-State Armored Servs., Inc.*, 332 B.R. 690, 714 (Bankr. D.N.J. 2005), *aff'd*, 366 B.R. 326 (D.N.J. 2007) (chapter 7 trustee is successor-in-interest to corporate debtor); *In re S. Rachles, Inc.*, 131 B.R. 782, 785 (Bankr. D.N.J. 1991) ("Upon conversion and appointment, a trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities."). In fact, in chapter 7, *only* the trustee "has standing to prosecute such claims on behalf of the estate." *In re Truong*, 557 B.R. 326, 342 (Bankr. D.N.J. 2016).

As the claims are New Jersey causes of action, New Jersey's six-year statute of limitations applies:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, . . . shall be commenced within 6 years next after the cause of any such action shall have accrued.

N.J.S.A. 2A:14-1.

Thus, the trustee is not time-barred from bringing a state law action in connection with the prepetition transfers.

## B. Standard to Quash Subpoena

The Purkinses challenge the trustee's subpoena as burdensome. Parties in interest may examine entities relating to the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter that may affect the administration of the debtor's estate. Fed. R. Bankr. P. 2004(b). The party may compel attendance at an examination and/or production of documents by issuing a subpoena as provided under Bankruptcy Rule 9016. Fed. R. Bankr. P. 2004(c). That rule, in turn, incorporates Federal Rule of Civil Procedure 45.

A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). An entity that believes a subpoena subjects them to an undue burden may move the court to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

New Jersey federal courts have described what must be demonstrated to quash a subpoena based on undue burden.

> The burden of proof to demonstrate a subpoena's undue burden lies with the objector to the subpoena. *See Official Committee of Unsecured Creditors v. Ashdale (In re LaBrum & Doak)*, 1998 Bankr. LEXIS 925, at *6-7 (Bankr. E.D. Pa. July 27,

5

1998) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)). . . . Once a motion to quash a subpoena is filed, the subpoena's issuer must show good cause for the Rule 2004 examination. *See In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). Once good cause is established, the objecting party must convince the court of the impropriety of the Rule 2004 examination. *See In re Buick*, 174 B.R. 299, 304 (Bankr. D. Colo. 1994).

*Jacobson v. Jacobson*, Nos. 05-35847, 06-2945, 2008 Bankr. LEXIS 4827, at *10-11 (Bankr. D.N.J. Jan. 23, 2008). *See Patrick Collins, Inc. v. John Does 1-13*, CIV.A. 12-7620 PGS, 2013 WL 3466833 (D.N.J. July 10, 2013):

> An undue burden exists when "the subpoena is 'unreasonable or oppressive.'" *In re Lazaridis,* 2011 WL 3859919, at *2 (D.N.J. Sept.1, 2011) (quoting *Schmulovich,* 2007 WL 2362598, at *4). Courts consider several factors to determine the reasonableness of the subpoena including; the party's need for production, the nature and importance of the litigation, the relevance of the material, the breadth of the request for production, the time period covered by the request, the particularity with which the documents are described, and the burden imposed on the subpoenaed party. (*Id.*)

*Id.*, at *3. *See also Jacobson v. Jacobson*, Nos. 2008 Bankr. LEXIS 4827, at *10-11 (same).

Cases discussing what the issuer of a subpoena must show to establish good cause focus on the relevance and scope of the requested information. *PSN Illinois, LLC v. Abbott Labs, Inc.*, CIV.A. 11-1577 SRC, 2011 WL 5508624, at *2 (D.N.J. Nov. 9, 2011). The likely benefits should outweigh the burden or expense. *Id.* Courts may consider the party's need for the documents. *In re Summit Glob. Logtics*, 08-11566(DHS), 2008 WL 1446722, at *4 (Bankr. D.N.J. Apr. 9, 2008).

1. Good cause

For his good cause argument, the trustee relies on the allegations of Mr. Lombard, which the latter supplemented in post-hearing briefing. There, Mr. Lombard elaborated on his suspicions:

> I do have ALL of the documentation and my "trend analysis" for the approximate four year period her finances were under complete control (via online banking). As I mentioned previously, my Mom has never used a computer and nearly all of her transactions were conducted by wire transfer. I will be happy to make a set of copies for you, sit and summarize what I've seen.

> As a retired Auditor for The Federal Reserve Bank of Philadelphia, as well as VP of Outsourse [sic] Auditing (Continental United States), the statements show all the classic hallmarks of theft by desception [sic]. The large sum with the initial deposit from the sale of her home, then small withdrawls [sic] as time went on. Once no "flags " are raised, several larger plateaus were reached; each of a higher dollar amount. By the time I, as Power-of-Attorney, suspended the account (about this

6

> time last year), the funds were withdrawn often the very same day they were posted by Social Security and her pension. Yes... the same day! In most cases they (Donna & George Purkins) would leave a net balance of a couple hundred dollars. At times the (Mom's) savings account was utilized as somewhat of a slush fund. For example, if too much cash was deducted in the beginning of the month and another withdrawal occurred within the same month, I noticed a transfer would be made from SAVINGS to CHECKING in order to cover any deficiencies. Typically the funds from savings would be replenished, once the first wire transfer from SS or the pension was received. They really had it down to a science, however they got greedy and have left my Mother virtually homeless.
>
> Yes, I do realize the accusations and statements I've written within the body of this email. I also understand this email may be used as evidence in a Court of Law. Realize, none of this is hyperbole and the analysis I've done from Navy Federal Credit Union was errored [sic] on the side of caution. My figures are conservative. This type of forensic analysis ls what I did for decades, however I was accustomed to detecting far more seasoned criminals.

Doc. No. 71-1, p. 2.

Mr. Lombard closed with "Please bear in mind, I take no pleasure in this situation. Following through with this was a decision made by my eldest sister Lorraine, my Mother and myself." *Id.*

The trustee cites his statutory duty under 11 U.S.C. § 704(a)(4) to investigate the financial affairs of the debtor and his ability to use Rule 2004 to fulfill that obligation. He states that the Purkinses' failure to provide sufficient information regarding the allegations against them necessitated the Second Subpoena. For one, they described all transfers as "debtor's housing and living expenses," with no additional detail or supporting documentation.

Here, the request is relevant because the Purkinses' response to the first subpoena, labeling every expense generically with "debtor's housing and living expenses," was deficient. The trustee needs the documents to determine whether he should file an adversary proceeding against the Purkinses for conversion, etc. As to burden, the trustee points out that he is only asking for document production, not depositions, and that the Second Subpoena only followed up on the deficiencies of the Purkinses' production pursuant to the first subpoena. The court adds that now that the trustee conceded he could not pursue any postpetition transfer, the subpoena's request will be limited to the two years' prepetition that Ms. Williams lived with the Purkinses.

However, the court is concerned that the trustee is admittedly relying solely on the certification of Ms. Williams' son and not on any allegation of Ms. Williams herself – the alleged victim. The trustee confirmed that he has taken no steps whatsoever in verifying any of the allegations made from Ms. Williams herself. What is more, Ms. Williams did not disclose in her schedules a potential action against her daughter and son-in-law. If the Purkinses helped themselves to her money without her consent, then she should be able to tell the court so. The trustee has not alleged that Ms. Williams is incompetent – just elderly. Indeed, she appears to have

7

filed her bankruptcy case on her own with the assistance of counsel. Mr. Lombard's allegations that his mother was not provided with receipts, was not told what her money was used for, and was denied access to her bank accounts, is hearsay. That Ms. Williams is competent is supported by Mr. Lombard's statement that "Following through with this was a decision made by my eldest sister Lorraine, my Mother and myself." Doc. No. 71-1, p. 2.

While initially, good cause has been alleged, the lack of Ms. Williams' involvement makes the court hesitant to find good cause now[4] but, this does not prevent the court from denying the Motion to Quash because, as set forth below, the court does not find that an undue burden exists.

2. <u>Undue Burden</u>

With the prospect of the trustee being able to show good cause in the future, the court will address whether the Second Subpoena constitutes an undue burden on the Purkinses. They cite only the cost of their attorney as the basis for their undue burden. But it is the Purkinses, not their attorney, who will be collecting and producing these documents. The Purkinses have not explained how complying with production of supporting documents results in further attorney fees and costs, or even as to costs to them personally. As all of the documentation should be within the Purkinses' control, the burden is minor. "A successful demonstration of undue burden requires more than generalized and unsupported allegations." *Stokes v. Cenveo Corp.*, 2:16CV886, 2017 WL 3648327, at *2 (W.D. Pa. Aug. 24, 2017) (internal quotation omitted).

The trustee requests receipts or other documentary support for all of the expenses – while this appears great, considering that the Purkinses likely do not have receipts for many of the lesser purchases such as toiletries or groceries, possibly the request can be satisfied by bank statements and check images only. However, the Purkinses did not allege that they did not have the receipts, only that it would be a burden to them to produce. Yet their list of expenses must be based on something, as they were able to state when and how much they allegedly spent on Ms. Williams.

The Purkinses also argued that the trustee already has some of Ms. Williams' bank statements. But the trustee clarified that it is bank statements of the Purkinses that he seeks, presumably to match withdrawals from Ms. Williams's bank accounts into the Purkinses' accounts. Electronic transfers from Ms. Williams's bank account to another might not identify the owners of the transferee accounts, or withdrawals may have been made in cash. In addition, the trustee might want to check what portion of the Purkinses's household expenses, such as utilities, they charged back to Ms. Williams to determine whether that was reasonable. Finally, obtaining one's own bank account statements, to the extent that the depositor and/or the bank has retained them, certainly is not burdensome. If older statements have not been retained, then the Purkinses need only so certify under oath. *See Neri v. Albuquerque Pub. Sch.*, CV 19-8 JCH/SCY, 2019 WL 4889015, at *2 (D.N.M. Oct. 3, 2019) ("Plaintiff has not represented that she has taken *any* steps to look for this information, such as searching her own files or simply asking her bank for copies. Without this information, the Court finds that Plaintiff has not shown that producing her bank statements would be an undue burden.").

---

[4] Indeed, a simple supportive certification from Ms. Williams may suffice.

8

Instead, the Purkinses only argued that they bear an undue burden in having to pay an attorney to assist them and/or that the trustee does not need their bank statements to investigate the debtor's finances. They have not alleged that their bank charges them to obtain back statements. *But see Dancy v. Lanxess Corp.*, 19-CV-02690-SHL-TMP, 2020 WL 5262311, at *5 (W.D. Tenn. Sept. 3, 2020) (finding $400 to obtain plaintiff's own bank statements "not unreasonably expensive."). The Purkinses have not alleged that they must make this request to a burdensome number of banks. As mentioned above, the trustee limited the number of years for his request, and the request is now even more limited given that the trustee no longer seeks statements for postpetition periods.

Other arguments of the Purkinses address the merits of the trustee's potential causes of action: that Ms. Williams did retain access to her bank accounts does not refute that the Purkinses did not steal from her, and that the amount transferred averaged $660/month can still be conversion or unjust enrichment if not authorized, or if it exceeded the Purkinses' costs and/or reasonable value of services.

The court holds that the Purkinses did not show that responding to the subpoena would be an undue burden. Accordingly, the court need not address their request for sanctions.

3. Timely motion and good faith conference

The trustee raised for the first time at the May 11 hearing that the Purkinses' motion was untimely and that they failed to confer in good faith. Rule 45(d)(3) provides that a person seeking to quash a subpoena must file a "timely motion." The rule does not define "timely, but "[i]t is well settled that, to be timely, a motion to quash a subpoena must be made *prior to the return date* of the subpoena." *Sines v. Kessler*, 325 F.R.D. 563, 567 (E.D. La. 2018) (quoting Estate of Ungar v. Palestinian Auth., 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006) (emphasis added by the *Sines* court). *See Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("Although Rule 45(c)(3)(A)(iv) requires that the motion to quash be timely without defining what 'timely' is, it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition."); *9 Moore's Federal Practice - Civil § 45.50* (2021) "Because Rule 45 does not provide any specific time period for bringing a motion to quash or modify, courts have required that the motion be made before the date specified by the subpoena for compliance.").

The return date of the second subpoena was January 28, 2021. The Purkinses filed their Motion to Quash the same day. Therefore, the motion was timely.

The court assumes the trustee's second late issue concerns the requirement under Civil Rule 26 that persons seeking a protective order certify that they "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1), incorporated by Fed. R. Bankr. P. 7026, 9014. The court will not address this argument as (1) the trustee had ample time to request supplementing his briefing to raise this issue, and (2) the issue is moot in light of the court's denial of the Purkinses' motion for a protective order.

9

C.     **Service of the Subpoena**

Rule 45 states that "Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person . . . ." Fed. R. Civ. P. 45(b)(1). The Purkinses object that the trustee's service of the Second Subpoena by certified mail does not constitute "delivering a copy to the named person."

The trustee argues that his mode of service complied with Rule 45(b)(1). He submitted a tracking page from the United States Postal Service showing that the subpoena was delivered on January 7, 2021 and "left with individual." Doc. No. 65-7, p. 1. He argues that "without any doubt . . . the Purkins[es] had actual knowledge of the Rule 2004 subpoena in question," Doc. No. 65, p. 9, as evidenced by their filing the Motion to Quash. He argues that courts in New Jersey have found proper service of a subpoena by certified mail, following the Seventh Circuit's decision in *Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012), which held that an agent of the postal service is a person at least 18 years old and not a party, and that certified mail provides the sender with a mailing receipt, thus it is valid. *Id.*, 557.

According to a leading treatise, satisfaction of Rule 45(b)(1) service by certified mail is still the minority position. Wright & Miller, § 2454, Service of a Subpoena, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.). *But see* 9 Moore's Federal Practice - Civil § 45.21[1] (2021) (recognizing the majority position but criticizing it as "unduly restrictive").

Reviewing those New Jersey decisions citing *Ott* reveals that the court in *New Jersey Bldg. Laborers Statewide Ben. Funds & Trustees Thereof v. Torchio Bros.*, CIV A 08-552, 2009 WL 368364 (D.N.J. Feb. 11, 2009) (J. Rodriguez), determined that service of the subpoena was valid after citing that the subpoena was sent via certified and regular mail and a certified mail receipt was signed by the respondent corporation. *Id.* "Certified mail serves the same purpose as Rule 45(b) which is to 'mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service.'" *Id.*, at *2 (quoting *Hill v. Sullivan,* 229 F.R.D. 501, 504 (D. Md. 2005)).

Another New Jersey case cited by the trustee as citing *Ott* favorably merely stated that "'[n]o special agent is required to serve a subpoena'" in denying an incarcerated plaintiff's request to have the Marshals Service serve a subpoena for him. *Corradi v. NJ State Parole Bd.*, CV165076FLWDEA, 2018 WL 5281425, at *3 (D.N.J. Oct. 24, 2018) (quoting *Love v. New Jersey Dep't of Corr.*, No. 15CV4404 (SDW)(SCM), 2017 WL 3151247, at *1 (D.N.J. July 24, 2017). In addition, it stated that the "Court need not determine at this juncture whether service of a subpoena by certified mail is appropriate. . . ." *Id*. Moreover, the *Love* decision cited by *Corradi* did not decide the issue, it only cited *Ott* favorably. *Love v. Love v. New Jersey Dep't of Corr.*, 15CV4404 (SDW)(SCM), 2017 WL 3151247, at *1 (D.N.J. July 24, 2017) (M.J. Mannion).

Finally, the court in *Jacobson v. Jacobson*, citing *Ott*, did not address whether certified mail was appropriate but stated that Rule 45(c)(3)(A) "does not require the quashing of a subpoena for a procedural defect such as improper service and instead the subpoena may be modified." *Jacobson v. Jacobson*, Nos. 05-35847, 06-2945, 2008 Bankr. LEXIS 4827, at *2 (Bankr. D.N.J. Jan. 23, 2008) (J. Steckroth).

Thus, the cases cited by the trustee at best stand for the proposition that service by certified mail is valid if the person or entity served signed the certified mail receipt, and that the remedy for improper service is modification of the subpoena.

Other New Jersey decisions held that delivery must be to the named person. The court in *Farley-Skinner v. Adventure Aquarium, LLC*, 2018 WL 3647209 (D.N.J. Aug. 1, 2018) explained its position as follows:

> Pursuant to Rule 45(b), "serving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b). Unlike service of a summons and complaint, personal service is required when serving a subpoena. *Whitmer v. Lavida Charter, Inc.*, No. 91-0607, 1991 WL 256885, 1991 U.S. Dist. LEXIS 17177 (E.D. Pa. Nov. 27, 1991). More specifically, courts within the Third Circuit have interpreted the word "delivering" in Fed. R. Civ. P. 45(b)(1) literally, requiring that an individual is served personally. *See Trs. Of the Int'l Union,* 2018 WL 1972790, at *2, 2018 U.S. Dist. LEXIS 69966, at *4; *N.J. Bldg. Laborers' Statewide Benefit Funds v. General Civ. Corp.*, No. 08-6065, 2009 U.S. Dist. LEXIS 78088, 2009 WL 2778313 (D.N.J. Sept. 1, 2009); *Parker v. Doe*, No. 02-7215, 2002 WL 32107937, 2002 U.S. Dist. LEXIS 23498 (E.D. Pa. Nov. 22, 2002); *In re Johnson & Johnson*, 59 F.R.D. 174, 177 (D. Del. 1973); *see also Alfamodes*, 2011 WL 1542709, at *1, 2011 U.S. Dist. LEXIS 44537, at *2 (emphasizing the longstanding literal interpretation of Fed. R. Civ. P. 45(b)(1) ).
>
> Defendant's service on Mr. Branella by certified mail does not comport with the personal service requirement of Fed. R. Civ. P. 45(b)(1).

*Farley-Skinner v. Adventure Aquarium, LLC*, 117CV04797RBKKMW, 2018 WL 3647209, at *2 (D.N.J. Aug. 1, 2018). Unlike the trustee's cited decisions, above, the subpoena in *Farley-Skinner* was directed to a natural person.

Of the cases cited by *Farley-Skinner*, the *General Civ. Corp.* decision is additionally helpful.[5] There, the court rejected the petitioner's service of an information subpoena on a natural person by regular and certified mail as being served "by postal mail." *Id.*, at *2. *See Parker v. John Doe #1*, CIV.A. 02-7215, 2002 WL 32107937, at *2 (E.D. Pa. Nov. 21, 2002) (denying service on a corporation by certified mail).

If the subpoena is not validly served, courts will not hold a party in contempt for failing to submit discovery. *Farley-Skinner v. Adventure Aquarium, LLC*, at *2 (D.N.J. Aug. 1, 2018); *Trustees of Int'l Union of Operating Engineers*, at *2 (D.N.J. Apr. 26, 2018); *Consol. Rail Corp. v. All. Shippers, Inc.*, CIV. 93-1327 DRD, 2015 WL 3658848, at *4 (D.N.J. June 12, 2015); *New Jersey Bldg. Laborers' Statewide Ben. Funds*, 2009 U.S. Dist. LEXIS 78088, at *2 (D.N.J. Sept. 1, 2009).

---

[5] The *Whitmer* case only stands for the proposition that it is not sufficient to leave a subpoena at the dwelling place of the witness, *Whitmer*, at *2. The *Trs. of the Int'l Union* decision concerned service by regular mail, not certified. *Trs. of the Int'l Union*, at *2.

11

      Here, the trustee did not serve the Purkinses personally for purposes of Rule 45(d)(1). Not only did he attempt service by certified mail, but the receipt only states that the subpoena was received by an individual: it does not identify that individual. Therefore, the court will deny the trustee's cross motion compelling the Purkinses to produce documents pursuant to the Second Subpoena.

      This holding will not defeat the trustee's case if he can produce a certification from Ms. Williams supporting his allegations, and then re-serve a subpoena requesting only documents relevant to the prepetition transfers using proper personal service.

      An appropriate order will be entered.

      Very truly yours,

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge